UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
**CHRIS ARCHIPOLO**,

            Plaintiff,   Docket No.: 1:24-cv-6432

   -against-   **COMPLAINT AND DEMAND FOR JURY TRIAL**

**SUFFOLK CONSTRUCTION COMPANY, INC.**,

            Defendant.
----------------------------------------------------------x

COMES NOW, Chris Archipolo, through his undersigned counsel for his *Complaint,* states as follows:

## INTRODUCTION

1. This is a civil action brought pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301-4335 ("USERRA"). It is brought by Mr. Archipolo against Defendant Suffolk Construction Company, Inc. ("Suffolk").

2. Pursuant to 38 U.S.C. § 4323(h)(1), "No fees or court costs may be charged or taxed against any person claiming rights under [USERRA]".

## JURISDICTION AND VENUE

3. The Court has jurisdiction over the subject matter of this civil action founded upon federal question jurisdiction, 28 U.S.C. § 1331, as conferred by actions arising under USERRA, 38 U.S.C. § 4323(b)(3).

4. Venue is proper in this judicial district under 38 U.S.C. § 4323(c)(2) because Defendant Suffolk maintains a place of business in this judicial district per 38 U.S.C. § 4323(c)(2) and is considered a "private employer" for the purposes of 38 U.S.C. § 4303(4)(A).

## **PARTIES**

5. Plaintiff, Mr. Chris Archipolo, currently resides in Orange County, New York.

6. Defendant Suffolk is registered in New York as a private, for-profit foreign business corporation with a place of business located in New York, New York. Suffolk was and is an "employer" for the purposes of 38 U.S.C. § 4303(4)(A) and is subject to suit under USERRA § 4323(a)(3).

7. Mr. Archipolo was an employee of Suffolk and served in the United States Marine Corps Reserve ("USMCR"). Plaintiff is a qualified employee and member of the uniformed services for purposes of 38 U.S.C. § 4303(3), (9), and (16).

8. Whenever and wherever reference is made to individuals who are not named as defendants in this action, but were employees/agents of defendant, or any of them herein, such individuals at all times acted on behalf of the defendants named in this action within the scope of their respective employments and agencies.

9. Whenever and wherever reference is made in this Complaint to any conduct of defendants, or any of them, such allegations or references shall also be deemed to mean the conduct of each defendant, acting individually, jointly and severally.

10. Plaintiff is informed and believes, and on the basis of that information and belief, alleges that all times mentioned in this Complaint, defendants were the agents and employees of their co-defendants, and in doing the things alleged in this Complaint were acting within the course and scope of that agency and employment.

**GENERAL ALLEGATIONS**

11. Mr. Archipolo realleges and incorporates herein by reference each and every allegation contained within paragraphs 1 through 10, inclusive, as though set forth at length herein and made a part hereof.

12. Mr. Archipolo enlisted the USMCR in 2011 and is currently serving as an E-6 (Staff Sergeant).

13. In early 2022, Mr. Archipolo applied for a Mechanical Superintendent position with Defendant. He interviewed with Mr. Wassem Dean, employed by Defendant as a Senior Mechanical Superintendent, and Mr. Kevin Morrissey, employed by Defendant as a Senior Mechanical Project Manager. He was offered and subsequently accepted the position, and began his employment with Defendant on February 21, 2022.

14. As the Mechanical Superintendent, Mr. Archipolo was responsible for overseeing the Mechanical section of the Residential Team. In this position, Mr. Archipolo was responsible for overseeing and coordinating the installation of utilities, such as electric, heating, ventilation, air conditioning, and fire-suppression systems.

15. As a member of the USMCR, Mr. Archipolo was required to perform periods of military service, such as: monthly training periods, more commonly known as "drills;" annual training periods – which generally lasted two weeks, but could last up to a month; and additional periods of service for administrative requirements, mobilizations in support of operational deployments around the world, and training to progress in his USMCR career.

16. On the second day of his employment with Defendant, Mr. Archipolo met with his assigned supervisor, Mr. Dean. During the meeting, Mr. Archipolo informed Mr. Dean of his anticipated USMCR training dates. Throughout the year, Mr. Archipolo would provide reminders

verbally, via emails, and via calendar invites leading up to each drill, annual training, and other military service obligation. Mr. Dean emailed the schedule and dates to the Mechanical team.

17. In early April, Mr. Archipolo met Mr. Jonathan Kraft, who was employed by Defendant as a General Superintendent. Throughout Mr. Archipolo's employment with Defendant, Mr. Kraft regularly voiced his disapproval that Mr. Archipolo's military service often required him to be unable to work on Fridays due to drill – sometimes departing work only thirty minutes earlier than originally scheduled. Mr. Kraft would say things to Mr. Archipolo, such as "you can't leave" and "you can't just come and go as you please."

18. Throughout the course of Mr. Archipolo and Mr. Kraft's working relationship, Mr. Kraft began to strip Mr. Archipolo of his job responsibilities and assign them to other employees – often belittling Mr. Archipolo in front of his peers on the job sites and during meetings.

19. Despite providing his drill schedule well in advance, Mr. Archipolo discovered in October of 2022 that Defendant scheduled him to work during a drill weekend. Rather than correct the schedule, Defendant required Mr. Archipolo to attempt to find another employee to switch with to avoid being short that weekend. When Mr. Archipolo told Mr. Kraft that he was unable to find another employee to switch with him, Mr. Kraft threatened to "write up" Mr. Archipolo if he did not show for work. Mr. Archipolo attended his drill weekend, and was yelled at by Mr. Kraft when he returned to work that following Monday.

20. That following December, Mr. Kraft informed Mr. Archipolo that he would be his direct supervisor instead of Mr. Dean, and in doing so would have direct control over Mr. Archipolo's pay raises, bonuses, and performance evaluations. Specifically, Mr. Kraft told Mr. Archipolo that he was happy to be in control of Mr. Archipolo's paid time off and approval of time

sheets, and that now Mr. Archipolo's wouldn't be getting away with "the stuff I pull with the Marines."

21. In January of 2023, Mr. Archipolo was scheduled by Defendant to work on Saturday, January 7th, however, he was also scheduled to drill with the USMCR on that weekend. Mr. Archipolo provided timely notice of his military service obligations to Defendant.

22. On January 10, 2023, the Monday following Mr. Archipolo's January drill, Mr. Kraft asked Mr. Archipolo to meet with him. During the meeting, Mr. Kraft told Mr. Archipolo that he was going to be written up for not attending work on January 7th and for not finding another employee to cover his shift due to his absence. Mr. Kraft further stated that Mr. Archipolo should "stop acting like [he's] invincible and that he can do whatever he wants because [he's] in the Marines."

23. On January 19, 2023, Mr. Archipolo learned from his USMCR unit that he was being mobilized to deploy overseas as early as February 1, 2023. He immediately informed Defendant's Human Resources personnel, and then Mr. Kraft, who yelled at Mr. Archipolo, stating that "it is a waste of time having [him] at this job site."

24. Mr. Archipolo requested paid time off for the last week of January to prepare for his deployment with the USMC. During that time, however, Mr. Archipolo's expected mobilization date of February 1, 2023 was delayed until March by the USMCR. Mr. Archipolo informed Defendant of the delay. Mr. Archipolo then returned to work on January 30th.

25. In the first week of February, Mr. Kraft emailed the Project Executive Victor Plevrites stating that Mr. Archipolo should be disciplined for not informing them of his military service obligations and schedule. Specifically, that Mr. Archipolo needed to be disciplined for not communicating his schedule properly and that when Mr. Archipolo was scheduled to work a

Saturday he was not showing up because of his military service with his USMCR unit. Mr. Archipolo replied to that email with his drill schedule, stating he had provided his drill schedule in multiple emails. After he sent the email Mr. Kraft raised his voice at Mr. Archipolo, and told him that he was being ridiculous and to "stop thinking [Mr. Archipolo] was untouchable because [he] was in the Marines."

26.     On February 14, 2023, during the weekly Foreman's meeting, Mr. Kraft told Mr. Archipolo that there was "nothing for him to do" because all of his responsibilities had been transferred to other employees.

27.     On February 22, 2023, Mr. Kraft sent a meeting invite to Mr. Archipolo that included Defendant's Human Resources employee Jackie Lewis. Mr. Kraft did not inform Mr. Archipolo about the basis for the meeting. During the meeting, Ms. Lewis informed Mr. Archipolo that he was being terminated because his position was no longer needed at the job site, anymore. Mr. Kraft threw severance papers across the table at Mr. Archipolo while smiling to antagonize Mr. Archipolo.

28.     The following day, Mr. Archipolo contacted Ms. Lewis about the termination and severance offer and reminded her that he was deploying with the USMCR in the coming weeks. Ms. Lewis immediately returned Mr. Archipolo's call and accused him of lying about the deployment. Mr. Archipolo denied lying about it and stated there were emails from January when he originally notified Defendant's Human Resources team of the deployment.

29.     Shortly after, Ms. Lewis called Mr. Archipolo again stating that the basis of his termination was changed to lack of performance. She stated that Mr. Kraft had verbally complained about his performance, however, Mr. Archipolo refuted that conversation ever occurred and

referenced that he was never written up for any performance issues or ever placed on a performance improvement plan.

30. Subsequently, Mr. Archipolo was terminated from his position with Defendant.

31. Mr. Archipolo declined to accept the terms of the severance agreement.

32. Following Mr. Archipolo's termination, he lost his healthcare insurance coverage Defendant provided, and incurred increased out of pocket costs due to the loss of coverage.

33. Mr. Archipolo was mobilized for an overseas deployment with the USMCR on March 25, 2023, and returned on September 30, 2023.

## COUNT I
### VIOLATIONS OF 38 U.S.C. § 4301 *et seq.*

34. Mr. Archipolo incorporates by reference the allegations contained in Paragraphs 1 through 33 as if fully restated herein.

35. USERRA prohibits "discrimination against persons because of their service in the uniformed services." 33 U.S.C. § 4301(a)(3).

36. Section 4311(a) of USERRA states in relevant part, that a person "who is a member of… performs, has performed,…or has an obligation to perform service in a uniformed service shall not be denied… *retention in employment,*… or any benefit of employment by an employer on the basis of that membership,… performance of service, or obligation." (italics added).

37. Section 4311(c) further provides, in relevant part, that "[an] employer shall be considered to have engaged in actions prohibited… if the person's membership… or obligation for service in the uniformed services is a motivating factor in the employer's action."

38. A "benefit of employment" is defined as:

> The term 'benefit', 'benefit of employment', or 'rights and benefits' means the terms, conditions, or privileges of employment, include any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work

performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations and the opportunity to select work hours or location of employment.

38 U.S.C. § 4303(2).

39. USERRA's definition of "service in the uniformed services" covers all categories of military training and service, including duty performed on a *voluntary* or *involuntary* basis, in time of peace or war. 38 U.S.C. § 4312(e)(1)(A)(i); 20 C.F.R. § 1002.115. (italics added).

40. Mr. Archipolo's protected status as a USMCR member was a substantial and motivating factor in Defendant Suffolk terminating his position in employment.

41. As a direct and proximate result of the conduct of Defendant as set forth in this count, Mr. Archipolo has suffered injuries and damages, including, but not limited to, loss of past earnings and benefits, and loss of future earnings and benefits, all amounts to be proven at trial.

42. Plaintiff alleges that Defendant had knowledge of Mr. Archipolo's USERRA protections, and that Defendant's subsequent violations of USERRA were willful and requests liquidated damages in an amount equal to the amount of his lost wages and other benefits pursuant to 38 U.S.C. § 4323(d)(1)(C).

43. Pursuant to 38 U.S.C. § 4323(d)(3), Plaintiff requests an award of prejudgment interest.

44. Pursuant to 38 U.S.C. § 4323(h)(2), Plaintiff further requests an award of reasonable attorney's fees, expert witness fees, and litigation expenses.

**PRAYER FOR RELIEF**

**WHEREFORE**, based upon the foregoing, Plaintiff prays for the following relief against Defendant:

1. Declaration that Defendant's actions and practices complained of herein are unlawful and in violation of USERRA, 38 U.S.C. § 4301, *et seq.*;

2. Require that Defendant fully comply with the provisions of USERRA by providing Plaintiff all employment benefits denied to him as a result of the unlawful acts and practices as complained herein.

3. Fees and expenses, including attorneys' fees pursuant to 38 U.S.C. § 4323(h)(2);

4. Award Plaintiff prejudgment interest on the amount of lost wages or employment benefits found due;

5. Order that Defendant pays compensatory and/or liquidated damages in an amount equal to the amount of lost compensation and other benefits suffered by reason of Defendant's willful violation of USERRA;

6. Grant an award for costs of suit incurred; and

Grant such other further relief as may be just and proper, and which Plaintiff may be entitled to under all applicable laws.

Dated: New York, New York
August 26, 2024

                                                **KREINDLER & KREINDLER LLP**

/s/ Vincent C. Lesch III
Justin T. Green, Esq.
Vincent C. Lesch III, Esq.
485 Lexington Ave., 28th Floor
New York, NY 10017
Telephone: (212) 973-3482
jgreen@kreindler.com
vlesch@kreindler.com

Brian J. Lawler, Esq. (*Pro Have Vice pending*)
**PILOT LAW, P.C.**
4632 Mt. Gaywas Drive
San Diego, CA 92117

Telephone: (619) 255-2398
blawler@pilotlawcorp.com

Kevin Wilson, Esq. (*Pro Have Vice pending*)
**KEVIN WILSON LAW PLLC**
3110 Horton Avenue
Louisville, KY 40220
Telephone: (502) 276-5050
kevin@klwilsonlaw.com

Attorneys for Plaintiff

# DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues triable as of right by a jury in this Complaint pursuant to Federal Rule of Civil Procedure 38(b).

Dated:  August 26, 2024

**KREINDLER & KREINDLER LLP**

/s/ Vincent C. Lesch III
Justin T. Green, Esq.
Vincent C. Lesch III, Esq.
485 Lexington Ave., 28th Floor
New York, NY 10017
Telephone: (212) 973-3482
jgreen@kreindler.com
vlesch@kreindler.com

Brian J. Lawler, Esq. (*Pro Have Vice pending*)
**PILOT LAW, P.C.**
4632 Mt. Gaywas Drive
San Diego, CA  92117
Telephone: (619) 255-2398
blawler@pilotlawcorp.com

Kevin Wilson, Esq. (*Pro Have Vice pending*)
**KEVIN WILSON LAW PLLC**
3110 Horton Avenue
Louisville, KY 40220
Telephone: (502) 276-5050
kevin@klwilsonlaw.com

Attorneys for Plaintiff